UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REZA DANESHFAR,

Petitioner,

v.

FACILITY ADMINISTRATOR, *et al.*,

Respondents.

Case No. C25-1708-DGE-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner Reza Daneshfar seeks relief from physical custody by Immigration and Customs Enforcement ("ICE") via a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. # 6.) Respondents have filed a return (dkt. # 9), Petitioner has filed a response (dkt. # 12), and Respondents have filed a reply (dkt. # 15). Having reviewed the parties' submissions and applicable law, this Court recommends granting Petitioner's habeas petition (dkt. # 6) and ordering his release on reasonable conditions. This Court's reasoning follows.

## II.    BACKGROUND

Petitioner, a native and citizen of Iran, entered the United States in or around October 2024. (De Castro Decl. (dkt. # 10), ¶ 3; Morris Decl. (dkt. # 11), Ex. A.) On October 20, 2024,

Border Patrol Agents detained him, and the Department of Homeland Security ("DHS")

subsequently issued a notice of expedited removal based on inadmissibility. (De Castro Decl.,

¶ 3; Morris Decl., Ex. B.) On May 23, 2025, an Immigration Judge ("IJ") entered a removal

order and denied Petitioner's asylum claim but granted withholding of removal to Iran. (De

Castro Decl., ¶ 4; Morris Decl., Ex. B.) Petitioner did not appeal this decision to the Board of

Immigration Appeals. (Dkt. # 6 at 4.) As a result, ICE is pursuing his removal to a third country.

(De Castro Decl., ¶ 5.) On July 2, 2025, ICE requested travel documents from France, Guyana,

and Papua New Guinea. (*Id.*, ¶ 6.) To date, none have responded (*id.*), and the Government has

provided no further updates regarding removal efforts.

### III.    ANALYSIS

Title 8 U.S.C. § 1231 governs the post-removal order detention of noncitizens. The

statute mandates detention during a 90-day "removal period." 8 U.S.C. §§ 1231(a)(1)(A), (a)(2).

For Petitioner, this period began on May 23, 2025, the date the IJ's order became final, and

ended on August 21, 2025. 8 U.S.C. § 1231(a)(1)(B)(i).

After the removal period expires, DHS may either continue detention or release the

noncitizen under supervision. 8 U.S.C. § 1231(a)(6). Although this provision authorizes

continued detention, it does not permit indefinite confinement. In *Zadvydas v. Davis*, the

Supreme Court held that detention under § 1231(a)(6) must be limited to a period reasonably

necessary to effect removal. 533 U.S. 678, 701 (2001). The *Zadvydas* Court established that

detention is "presumptively reasonable" for six months following entry of a final removal order.

*Id*. After six months, if the noncitizen shows "good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future," the burden shifts to the Government

to rebut that showing with evidence. *Id*. If the Government fails to do so, the noncitizen is entitled to habeas relief. *Id*.

## IV.    DISCUSSION

### A.    The Government Has Not Met Its Burden Under *Zadvydas*

Petitioner has been detained for nearly seven months following entry of a final removal order, exceeding the six-month presumption of reasonableness set forth in *Zadvydas*. (Dkt. # 6 at 4.) The Government concedes it cannot remove Petitioner to Iran due to the grant of withholding and that no third country has agreed to accept him. (Dkt. # 9 at 2-5.) Nor has the Government provided any indication that its removal efforts continued beyond July 2, 2025. Petitioner has thus established "good reason" to believe that removal is not significantly likely "in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden now rests with the Government to present evidence rebutting this showing. *Zadvydas*, 533 U.S. at 701. Its response is inadequate for two reasons. First, the Government fundamentally mischaracterizes the nature of Petitioner's claim. He does not oppose removal to a third country in the abstract; he challenges the Government's failure to demonstrate that removal to *any* country is reasonably foreseeable. (Dkt. ## 6, 12.)

Second, and more critically, the Government offers no evidence whatsoever to suggest that removal is likely in the reasonably foreseeable future. (Dkt. ## 9, 15.) Its sole factual assertion—that it sent requests to three countries nearly six months ago and received no responses—only underscores the absence of progress. (De Castro Decl., ¶ 6.) There is no indication of follow-up communication, alternative efforts, a projected timeline, or any other plausible strategy for effecting removal. This approach falls short of the Government's burden under *Zadvydas* to present credible evidence of removability.

1    Accordingly, this Court finds that the Government has not demonstrated a significant

2  likelihood of removal in the reasonably foreseeable future. Petitioner's continued detention

3  therefore exceeds the limits of 8 U.S.C. § 1231(a)(6) as construed by *Zadvydas*, 533 U.S. at

4  699-700. Accordingly, Petitioner's detention is unlawful. *See, e.g.*, *Panfilov v. Bondi*, 2025 WL

5  3190522, at *3 (W.D. Wash. Nov. 14, 2025) (allowing release upon a finding that removal was

6  not reasonably foreseeable); *Kamyab v. Bondi*, 2025 WL 2917522, at *4 (W.D. Wash. Oct. 14,

7  2025) (same)*; Bernik v. Bondi*, 2025 WL 2638625, at *3 (W.D. Wash. Aug. 15, 2025), *report*

8  *and recommendation adopted,* 2025 WL 2637678 (W.D. Wash. Sept. 12, 2025) (same); *Hoac v.*

9  *Becerra*, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (same).

10    **B.    Petitioner's Ability to Seek Relief**

11    The Government also argues that the Court may not grant relief because Petitioner is a

12  member of the plaintiff class in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 2025 WL 942948, at *1

13  (D. Mass. Mar. 28, 2025). (Dkt. # 9 at 5-8.)

14    This argument was previously raised in *Nguyen v. Scott*, 796 F. Supp. 3d 703, 729-32

15  (W.D. Wash. 2025), and more recently in *Baltodano v. Bondi*, No. 2:25-CV-01958-RSL (W.D.

16  Wash. Nov. 7, 2025) and *Abubaka v. Bondi*, No. 2:25-CV-01889-RSL (W.D. Wash. Nov. 17,

17  2025). As in those cases, this Court adopts the reasoning in *Nguyen*, which held that (1) "[t]he

18  class certification order in *D.V.D.* does not prevent this Court from adjudicating Petitioner's

19  claims regarding third-country removal" and (2) absent "clear guidance from the Supreme

20  Court," which the emergency docket order in *D.V.D.* does not provide, this Court must follow

21  well-established precedent. *Nguyen*, 796 F. Supp. 3d at 732.

22

23

C.      **Due Process and Third-Country Removals**

Finally, the Government contends that Petitioner's challenge to potential third-country removal fails because (1) he waived the argument by not raising it in his petition; (2) DHS procedures, such as reasonable fear interviews and motions to reopen, adequately protect against removal to countries where he might face persecution or torture; and (3) without a designated third country, any claim of future harm is speculative and does not present a live case or controversy. (Dkt. # 9 at 4-5.) These arguments are unpersuasive.

First, as noted previously, the Government misconstrues Petitioner's challenge. He is not opposing removal to a third country itself but rather whether removal is reasonably foreseeable. The possibility of eventual removal to another country does not address this question.

Second, the Government's reliance on agency procedures is insufficient. Due process requires advance notice of the proposed country of removal and a meaningful opportunity to challenge that decision in a full adversarial hearing before an IJ. *See Nguyen*, 796 F. Supp. 3d at 729-32 (finding petitioner was "likely to succeed on his claim that removal to a third country under ICE's current policy, without meaningful notice and reopening of his removal proceedings for a hearing, would violate due process"). Internal mechanisms cannot substitute for the procedural safeguards required by the Constitution and statute.

Third, the alleged injury is not speculative. The Government's assertion that Petitioner suffers no harm absent a designated third country overlooks the fact that the risk of removal without due process itself constitutes a concrete injury. Courts in this district have consistently held that challenges to ICE's third-country removal policy are likely to succeed because the deprivation of procedural protections results in immediate and irreparable harm. *See*, *e.g.*, *J.R. v. Bostock*, 796 F. Supp. 3d 684, 691 (W.D. Wash. 2025); *Baltodano v. Bondi*, 2025 WL 2987766,

at *3 (W.D. Wash. Oct. 23, 2025) (finding petitioner "likely to succeed on the merits of his claim that he is entitled to 'legally required multistep procedures set out in 8 U.S.C. § 1231(b) and required by due process' before ICE can remove him to a third country").

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends granting the petition for a writ of habeas corpus (dkt. # 6) and ordering Petitioner's release under appropriate conditions of supervision. A proposed Order and Judgment accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 6, 2026**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable David G. Estudillo.

Dated this 16th day of December, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge